IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

AMY ROWENS,

    Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

    Defendant.
_____/

No. CIV S-09-0163 GGH

ORDER

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for continuing child disability benefits under Title XVI of the Social Security Act ("Act"). For the reasons that follow, plaintiff's Motion for Summary Judgment is granted. The Clerk is directed to enter judgment for the plaintiff.

BACKGROUND

    Plaintiff, born May 6, 1987, received disability benefits until she reached 18 years of age based on borderline intellectual functioning, PTSD, ADHD, depression, severe anxiety, and anti-social behavior. (Tr. at 24, 72.) She was reevaluated and found no longer disabled on October 1, 2005. (Tr. at 73.) The Appeals Council denied plaintiff's request for review. In a decision dated March 24, 2008, ALJ Theodore T. N. Slocum determined plaintiff was no longer

1

disabled. The ALJ made the following findings:[1]

    1. The claimant attained age 18 on May 5, 2005 and was eligible for supplemental security income benefits as a child for the month preceding the month in which she attained age 18. The claimant was notified that she was found no longer disabled as of October 1, 2005, based on a redetermination of disability under the rules for adults who file new applications.

    2. Since October 1, 2005, the claimant has had the following severe impairments: anxiety, depression and Borderline Intellectual Functioning (20 CFR 416.920(c)).

    3. Since October 1, 2005, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

    4. After careful consideration of the entire record, the

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

        undersigned finds that, since October 1, 2005, the claimant had the residual functional capacity to perform simple repetitive low stress work at all exertional levels.

5.     The Claimant has no past relevant work (20 CFR 416.965).

6.     The claimant is a younger individual age 18-44 (20 CFR 416.963).

7.     The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.     Since October 1, 2005, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was able to perform a significant number of jobs in the national economy (20 CFR 416.960(c) and 416.966).

10.     The claimant's disability ended on October 1, 2005, and the claimant has not become disabled again since that date (20 CFR 416.987(e) and 416.920(g)).

(Tr. at 11-19.)

ISSUES PRESENTED

        Plaintiff has raised the following issues: A. Whether the ALJ Erred in Failing to Find that Plaintiff's Mental Impairment Met Listing 12.05C; B. Whether the ALJ Erred in Crediting Dr. Kahler's Internally Inconsistent Psychiatric Opinion and in Mischaracterizing the Evidence from Plaintiff's Treating Provider; C. Whether the Appeals Council Rejected the Opinions and Additional Evidence from Plaintiff's Treating Psychiatric Provider Without a Legitimate Basis; D. Whether the ALJ Failed to Credit Plaintiff's and Lay Witness Testimony Regarding Her Functional Limitations; and E. Whether the ALJ Erred in Utilizing the Grids and Not Securing Vocational Expert Testimony.

LEGAL STANDARDS

        The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

A. Listing 12.05

Plaintiff contends that she meets or equals Listing 12.05C. The ALJ determined in finding no. 3 of the decision that plaintiff's impairments did not meet or equal an impairment listed in the Regulations' "Listing of Impairments" ("Listings"), which lists impairments to thirteen categories of body systems which are severe enough to preclude any gainful activity. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d). When all the requirements of a listing are met, the described condition is irrebuttably presumed disabling. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. § 404.1520(d).

At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing. A mere *diagnosis* of a listed impairment is not sufficient. Specific findings included in each listing also must be met. See, e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985). Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled. Young, 911 F.2d at 183.

Listing 12.05 provides in part:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.[2]
  The required level of severity for this disorder is met when the requirements in A, B, C, **or** D are satisfied.
...
C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work- related limitation of function;
...

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05(c).  (emphasis added).

"An impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987).  This, in other words, is the definition of a "severe" impairment.  Thus, in this circuit, a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, apart from the decreased intellectual function, meets the second prong of the §12.05C listing. Id.; see also Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997); Edwards v. Heckler, 736 F.2d 625, 629-31 (11th Cir.1984); Nieves v. Secretary of Health & Human Servs., 775 F.2d 12, 14 & n. 7 (1st Cir.1985)).  Indeed, in footnote 3 of the Fanning decision, the court found that the "extra" impairment need not even reach the "severe" limit; although one might be hard pressed to call a less than "severe" impairment, an impairment at all.

In Fanning, the first prong of the listing was met because plaintiff's IQ was found to be between 76 and 69.  Fanning, 827 F.2d at 633.  The court imposed a standard applicable to the second prong, that the impairment must have more than a slight or minimal effect on plaintiff's ability to perform basic work activities.  Id.  Because the ALJ had not considered this

---

[2]  Indeed, in the DSM-IV, in order to be considered mentally retarded, one must exhibit this retardation prior to age 18.  DSM IV-TR at 41.

question in regard to the plaintiff's knee injury, the court remanded the matter.  Id.

In the instant case, the ALJ found plaintiff to have the severe impairment of borderline intellectual functioning.  (Tr. at 13.)  In making this finding, the ALJ found that plaintiff had a verbal IQ of 75, a performance IQ of 66,and a full scale IQ of 70.  (Id.)  The ALJ did mention that Dr. Kahler had noted that under ideal conditions, plaintiff may have scored higher on these tests.  (Tr. at 17.)

Defendant argues that plaintiff must be diagnosed with mental retardation in order for this listing to be met, regardless of her IQ scores.  Although defendant cites out of circuit authority to the contrary, a formal diagnosis of mental retardation is not required.  Christner v. Astrue, 498 F.3d 790, 793 (8th Cir. 2007); Lewis v. Astrue, 2008 WL 191415 at * 5 (N.D. Cal. 2008).

The record indicates a range of IQs between 66 and 75; however, the listings specify that when verbal, performance, and full scale scores are provided by IQ tests, the ALJ must consider the lowest of these scores.  20 C.F.R., Pt. 404, Subpt.  P, App. 1, §12.00(D)(6)(c).  Therefore, plaintiff has met the first prong of the listing.

Plaintiff's subaverage intellectual functioning was assessed when she was 18 years old; thus the onset date prerequisite is satisfied.

The ALJ found plaintiff to have the severe impairments of anxiety and depression, in addition to borderline intellectual functioning.  (Tr. at 13.)  Dr. Kahler, the psychologist upon whom the ALJ placed significant weight, diagnosed mild to moderate anxiety disorder and evidence of adult ADHD.  (Tr. at 526.)  Her GAF at this evaluation was 50, and it was estimated that her GAF in the last year was 50.[3]

---

[3] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to

The ALJ did not specifically discuss why plaintiff did not meet section 12.05. Rather, he analyzed why she did not meet sections 12.04 and 12.06, and mentioned in passing that he had carefully considered whether plaintiff's impairments met any of the section 12.00 listings. He did state:

> In this case, because the evidence on record shows that the claimant's impairments are characterized by cognitive deficits; anxiety; sleep disturbance; fearfulness; decreased energy and concentration; feelings of worthlessness; and a low tolerance for stress and pressure; it is necessary to evaluate her degrees of limitation utilizing the "B" criteria of sections 12.04, 12.05 and 12.06 in order to determine whether her impairments meet or equal the listing.
>
> Upon review of the medical evidence on record, the undersigned has determined that the claimant has mild restrictions in her activities of daily living, mild difficulty in maintaining social functioning, moderate deficiencies of concentration, persistence, or pace, and has not experienced frequent episodes of decompensation in a work-like setting.

(Tr. at 14.) He then concluded that her "impairments, although severe, do not meet or equal the criteria of sections 12.04, 12.05 or 12.06." (Id. at 14.)

The ALJ, however, had previously found that plaintiff's anxiety and depression constituted severe impairments at step two. Therefore, pursuant to Fanning and the cases cited above, a finding of severe impairment at step two equates to a per se finding of "impairment imposing additional and significant work-related limitation of function" as defined in the second prong of listing 12.05C.

The other evidence of record concerning plaintiff's condition after she turned 18 years old supports this finding. Plaintiff's treating psychiatrist, Dr. Klein, opined on May 16, 2008 that plaintiff was permanently precluded from working due to post traumatic stress disorder. (Tr. at 776.) On June 17, 2005, plaintiff was diagnosed with dysthymic disorder and

\\\\\

---

keep a job)."

separation anxiety disorder. Her GAF at this time was 31[4] and the psychologist opined that 31 was her highest score in the past year. (Tr. at 367.) On October 18, 2005, plaintiff was diagnosed with PTSD and generalized anxiety disorder. (Id. at 334.) On March 1, 2007, plaintiff was diagnosed with MDD (major depressive order), mild, generalized anxiety disorder, and post traumatic stress disorder. (Tr. at 240.) Her GAF at this time was 55.[5] (Id.)

There was also evidence that plaintiff was unable to keep a job. On January 5, 2005, plaintiff refused to apply for subsidized employment through Shasta County Special Education Program. She also refused to participate at a work job site off campus. (Id. at 537.) On March 15, 2005, it was noted that plaintiff had quit a job without giving a reason. (Id. at 316.) There was a note that as of May, 2005, plaintiff was unemployable due to her attitude and refusal. (Id. at 543.) Plaintiff testified that she worked at Burger King for five or six days but could not do anything but clean the restroom because she would forget orders when she worked at the counter and could not do more than one thing at a time. (Id. at 814-15.) Plaintiff was able to work at least once a week on a volunteer basis at the YMCA for two years, but was fired when she had a confrontation with a parent. (Tr. at 16, 521.) She was also fired from her volunteer job at a convalescent home where she worked several times per week. (Tr. at 126, 522.) According to plaintiff's mother, she was fired from these jobs due to her bad attitude and rudeness. (Id.)

Because plaintiff has met both prongs of the listing, she must be awarded benefits. As this decision remands for calculation and payment of benefits only, there is no need to discuss plaintiff's other assertions of error.

---

[4] According to the DSM IV, A GAF of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM IV at 34.

[5] According to the DSM IV, a GAF of 51-60 indicates moderate symptoms such as flat affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in few friends or conflicts with peers or co-workers.

CONCLUSION

Accordingly, pursuant to 42 U.S.C. § 405(g), sentence four, summary judgment is awarded to plaintiff.[6]  Judgment shall be entered in favor of plaintiff.  This case is remanded for a computation and payment of benefits only.

DATED: 08/02/10

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Rowens0163.ss.wpd

---

[6] The Commissioner did not file a cross-motion for summary judgment, but only an opposition to plaintiff's motion.